[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11173

_____

D.C. Docket No. 2:10-cr-14089-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HIPOLITO ALEJANDRO FELIX,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 20, 2012)

Before HULL and FAY, Circuit Judges, and WHITTEMORE,[*] District Judge.

PER CURIAM:

_____

[*]Honorable James D. Whittemore, United States District Judge, Middle District of
Florida, sitting by designation.

After pleading guilty, Hipolito Alejandro Felix appeals his conviction for one count of attempting to produce child pornography, in violation of 18 U.S.C. § 2251(a). On appeal, Felix challenges the voluntariness of his guilty plea, claiming for the first time that the magistrate judge did not adequately advise him of the nature of the charges against him, and thus, that his guilty plea should be set aside. After plain error review, and with the benefit of oral argument, we affirm Felix's conviction.

## I. BACKGROUND

### A. Indictment

In November 2010, a federal grand jury indicted Felix on three counts: attempting to persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction was intended to be transported in interstate commerce and was produced using materials that had been transported in interstate commerce, in violation of 18 U.S.C. § 2251(a) (Count 1); using an internet service to knowingly persuade, induce, entice, and coerce a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b) (Count 2); and knowingly transferring obscene material to a minor in violation of 18 U.S.C. § 1470 (Count 3).

Because this appeal involves only the § 2251(a) attempt offense in Count 1,

we quote Count 1 in full:

> On or about January 14, 2010, in St. Lucie County, in the Southern District of Florida, the defendant,
>
> HIPOLITO ALEJANDRO FELIX
>
> did employ, use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction was intended to be transported in interstate commerce and was produced using materials that had been mailed, shipped, and transported in interstate commerce, or attempted to do so, in violation of Title 18, United States Code, Section 2251(a).

In short, Count 1 charged Felix with attempting to induce or entice a minor to engage in sexually explicit conduct in order to produce a picture of that conduct, which picture was intended to be transported in interstate commerce and was produced using materials that were transported in interstate commerce.

## B.    Plea Agreement and Factual Stipulation

On January 3, 2011, Felix entered a guilty plea pursuant to a negotiated plea agreement with the government.  Under the agreement's terms, Felix agreed to plead guilty to Count 1 of the indictment, which the agreement listed on its first page as "Attempt to Produce Child Pornography, in violation of Title 18, United States Code, Section 2251(a)."  In exchange, the government agreed to dismiss Counts 2 and 3 of the indictment and to request a three-level reduction to Felix's advisory sentencing guidelines range for his acceptance of responsibility.  In the

3

agreement, Felix acknowledged that Count 1 carried a 15-year mandatory minimum and a 30-year maximum term of imprisonment.

Felix and the government concurrently executed and filed a factual stipulation in support of his guilty plea to the § 2251(a) attempt offense in Count 1. Felix personally signed the factual stipulation and so did his attorney and his interpreter. On its first page, the stipulation stated that, on or about January 14, 2010, Felix had

> attempt[ed] to use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction was intended to be transported in interstate commerce and was produced using materials that had been mailed, shipped, and transported in interstate commerce, in violation of Title 18, United States Code, Section 2251(a).

(emphasis added). Thus, the factual stipulation, signed by Felix, set forth all the elements of the Count 1 offense.

The factual stipulation also contained the following factual details showing the elements of the § 2251(a) attempt offense were satisfied. On January 19, 2010, Detective Sheila LaGrega of the Port St. Lucie Police Department began an investigation of inappropriate text messages sent to a 15-year-old female, who was identified as "AB" with a date of birth of December 23, 1994. Defendant Felix was AB's foster father at the time.

AB advised Detective LaGrega that she had received sexually explicit text

4

messages on her cell phone from a Yahoo! user named "tania_hot69." AB also advised Detective LaGrega that she had been replying to the text messages, and that AB originally thought they were sent by her former friend named Tania. In December 2009, AB came to realize that the text messages were not from Tania, and she asked the "tania_hot69" user who he was. AB received a response from "tania_hot69" indicating that the user was Felix.

Detective LaGrega reviewed the contents of AB's cell phone. On the cell phone was a message sent on January 14, 2010 from "tania_hot69." The message contained a picture of Felix holding his penis. A message sent from "tania_hot69" to AB four minutes later said "let me see u pussy," and a third message, sent shortly after the second, said "Id like to see u pussy." Detective LaGrega believed that these messages were requests from Felix to AB to take a photo of her vagina and send the photo to Felix. A later forensic examination of AB's cell phone revealed, in addition to the messages and photo previously discussed, photos of AB taking a picture of herself in a mirror while exposing her vagina.

Detective LaGrega interviewed Felix, who admitted that he created the "tania_hot69" Yahoo! username and sent text messages to AB using that username. He also admitted sending a picture of his penis to AB. As to interstate commerce, Felix acknowledged that the text messages he sent to AB were relayed

5

through servers located in California, and that his and AB's cell phones were manufactured in foreign countries.

## C.     Plea Colloquy

At a change-of-plea hearing held on January 3, 2011, Felix, through an interpreter, consented to proceed before a magistrate judge.  Felix informed the magistrate judge that he was 38 years old, had "finished everything" in school, and that he was not under the influence of drugs or alcohol and had received no recent treatment for mental illness or addiction.

Felix affirmed that he had received a copy of the indictment and had "fully discussed" his charges and case in general with counsel.  Felix admitted that he was pleading guilty pursuant to a plea agreement, which he had signed after reviewing it with counsel through the use of an interpreter.  The colloquy between Felix and the magistrate judge was as follows:

> THE COURT: Have you received a copy of the indictment pending against you and have you fully discussed those charges and the case in general with your attorney?
>
> FELIX: Yes, sir.
>
> THE COURT: Are you fully satisfied with the counsel, representation, and advice given you in this case by your attorney?
>
> FELIX: Yes, sir.
>
> THE COURT: Is your willingness to plead guilty the result of

6

discussions that your attorney has had with the attorney for the government which has resulted in this written plea agreement I have in my hand which I'm showing you?

FELIX: Yes, sir.

THE COURT: Did you have an opportunity to completely review this plea agreement with your attorney through the use of an interpreter, and discuss it with your attorney completely and have her answer all of your questions before you signed it?

FELIX: Yes, sir.

Felix also admitted that he entered into the plea agreement because he

believed it was in his best interest to do so:

THE COURT: [Your attorney] has just told me that you believe that this plea agreement and entering into this plea agreement and pleading guilty pursuant to the terms of the plea agreement are in your best interest, is that correct, sir?

FELIX: Yes, sir.

Felix confirmed that he was pleading guilty of his own free will, and

because he was guilty, as shown:

THE COURT: You have listened to all the advice that your attorney has given you and you have decided that you wish to enter into this plea agreement fully and voluntarily and plead guilty, is that correct, sir?

FELIX: Yes, sir.

THE COURT: And while [your attorney] didn't say it, I think she is implying that she can give you the advice but you are the person that end up suffering the penalty. If you go to jail or any other penalties which are imposed at sentencing, you are the person that is sentenced. So it is

7

your decision whether or not to plead guilty. Do you understand that, sir?

FELIX: Yes, sir.

. . . .

THE COURT: Are you pleading guilty of your own free will because you are guilty?

FELIX: Yes, sir.

Proceeding to the terms of Felix's plea agreement, the magistrate judge and

Felix engaged in this discussion:

THE COURT: Paragraph one of your plea agreement talks about the charge to which you are pleading guilty.  It says the defendant agrees to plead guilty to Count One of the indictment which count charges the defendant with attempt to produce child pornography in violation of Title 18, United States Code, section 2251(a).  Is that the charge to which you understand you are pleading guilty, sir?

FELIX: A moment, please.

THE COURT: Okay.  For the record Mr. Felix just wanted time to discuss something with his attorney through the use of the interpreter. I will ask you again. The charge that I read to you which is contained within paragraph one of your plea agreement, Mr. Felix, is that the charge to which you are pleading guilty?

FELIX: Yes, Sir.

THE COURT: Any hesitation?  Why are you hesitating when I ask you that question?  It is either a yes or no?

FELIX: I just (inaudible) that I have never been in trouble before.  I have never been in a case.  That's why I'm hesitating longer.

8

THE COURT: That's fine and I have no problem. I just want to make sure that you understand that that is the charge to which you are pleading guilty. Any issues concerning your background or the—any other mitigation— factors in mitigation or statements you wish to make, you will have the right to make at sentencing. I just need to make sure that you understand the charge to which you are pleading guilty and that you wish to do so, Sir. Otherwise you have a right to proceed to trial. You have that constitutional right. No one wishes to make you plead guilty, and I am going to discuss that later during this proceeding this morning. I just want a clear record that this is what you wish to do. And you wish to continue to plead guilty, is that correct, sir?

FELIX: Yes, Sir.

THE COURT: And the charge to which you understand you are pleading guilty is the charge as set forth in Count One of the plea agreement which I read to you, is that correct, sir?

FELIX: Yes, sir.

The magistrate judge next informed Felix that Count 1 carried a mandatory minimum sentence of 15 years' imprisonment and a maximum of 30 years' imprisonment, followed by a term of supervised release ranging from 5 years to life. Felix indicated that he understood that as a result of his conviction, he could be required to register as a sex offender and could be subject to additional punishment for noncompliance. Felix further indicated that he understood the trial rights that he gave up by pleading guilty, the process by which the district court would calculate his advisory sentencing guideline range, and the collateral consequences of being a convicted felon.

9

Turning to the factual stipulation, the magistrate judge commented that it appeared to set forth the elements of Count 1 sufficient to sustain Felix's plea. The magistrate judge observed that Felix, counsel for both parties, and an interpreter signed the stipulation. Felix then admitted that he reviewed the stipulation with counsel, and that it set forth the facts of his case as he understood them. The colloquy went this way:

> THE COURT: Mr. Felix, this stipulated factual basis, did you have an opportunity to completely review it with your attorney through the use of an interpreter and discuss it with her before you signed it?
>
> FELIX: Yes, sir.
>
> . . . .
>
> THE COURT: And, Mr. Felix, on the third line I'm pointing to with my thumb on this stipulated factual basis is that your signature, sir?
>
> FELIX: Yes, sir.
>
> THE COURT: And this was read to you by an interpreter who signed below your name, is that correct, sir?
>
> FELIX: Yes, sir.
>
> THE COURT: Do you agree to this fact, that these facts set forth in this factual basis, sir, accurately set forth the facts in your case as you understand them to be?
>
> FELIX: Yes, sir.

The magistrate judge then inquired if there was any reason to read the

10

stipulation into the record, but counsel for both parties indicated that there was not. Specifically, the colloquy between the magistrate judge, Felix's counsel (Panayotta Augustin-Birch), and counsel for the government (Carmen Lineberger) was as follows:

> THE COURT: Miss Birch and Miss Lineberger, any reason I need to read this [the stipulation] into the record if it is going to be filed?
>
> MS. LINEBERGER: No, your honor.
>
> MS. AUGUSTIN-BIRCH: No.
>
> THE COURT: Thank you both. It will be filed.[1]

When asked how he pled to Count 1, Felix answered, "Guilty." The magistrate judge found that Felix was competent to enter an informed plea, and was aware of the nature of his charge and the consequences of pleading guilty. The magistrate judge further found that the plea to Count 1 was supported by an independent factual basis that established each element of Count 1. Accordingly, the magistrate judge declared that he would recommend that the district court accept Felix's guilty plea.

In a report and recommendation ("R&R") detailing Felix's plea hearing, the magistrate judge reiterated that a factual basis existed that established all elements

---

[1]Felix was represented throughout the case—before the magistrate judge, the district judge, and this Court on appeal—by the same counsel from the office of the Federal Public Defender.

11

of Count 1. The magistrate judge recommended that the district court accept Felix's plea because Felix had "freely and voluntarily entered" it, and notified Felix that he had 14 days to file objections to this recommendation. Neither party objected to the R&R, and the district court issued a paperless order adopting the R&R and accepting Felix's plea of guilty to Count 1.

At a sentencing hearing held on February 28, 2011, the district court sentenced Felix to a statutory mandatory minimum term of 15 years' imprisonment, followed by a lifetime term of supervised release.

### D.    Post-Judgment Motion to Withdraw Plea

On March 8, 2011, Felix filed a pro se "Notice to Change of Plea." Without further explanation, Felix requested that the district court change his plea because he was ready to proceed to trial. Shortly thereafter, through counsel, Felix filed a notice of appeal of his judgment and sentence.

Following the government's response, the district court construed Felix's "Notice to Change of Plea" as a motion to withdraw his guilty plea and denied it. The district court concluded that it had no authority to grant Felix relief because he had already been sentenced. Alternatively, the district court found that Felix's motion was without merit.

Later in March 2011, Felix sent the district court a pro se motion for

12

substitute counsel in which he contended that his counsel "tricked" him into accepting the guilty plea. Felix maintained that he was innocent and "always wanted to go to trial." Felix repeated his request for substitute counsel in two additional pleadings, filed with the district court in April and June 2011. In the June request, Felix alleged that his attorney induced him to plead guilty despite his innocence, that no child pornography was found on his computer, and that the phone number from which the text messages were sent did not belong to him.

### E.    Felix's Filings on Appeal

On appeal to this Court, Felix's counsel originally filed a brief and motion to withdraw from representation, pursuant to the procedure outlined in Anders v. California, 386 U.S. 738, 87 S. Ct. 1396 (1967). After we denied Felix's counsel's first motion to withdraw, Felix's counsel filed a renewed motion, again asserting that there were no issues of arguable merit for purposes of appeal. Felix opposed counsel's renewed motion, arguing that he had pled guilty to the wrong charge based on the incorrect advice of counsel, who told him that the record would be corrected to reflect that he was actually pleading guilty to Count 3 of the indictment. Felix further argued that "[h]ad [he] known he would plead guilty to § 2251(a), [he] would not have entered plea during his Rule 11 hearing."

We denied Felix's counsel's renewed motion to withdraw, directing counsel

13

to file a brief addressing whether the magistrate judge, during Felix's plea colloquy, had complied with the second core concern of Rule 11 by ensuring that Felix understood the nature of the charge to which he pled guilty. Thereafter, Felix's counsel filed a brief challenging the validity of Felix's guilty plea. The government filed a brief in opposition, arguing first that Felix had waived any challenge to his guilty plea by failing to object to the magistrate judge's R&R that found that Felix's plea was knowingly and voluntarily entered, and second, that Felix's guilty plea was valid. Felix's counsel did not file a reply brief.

## II.  STANDARD OF REVIEW

At the outset, we must address what standard of review governs our consideration of Felix's appeal. It is undisputed that neither Felix nor his counsel objected to the magistrate judge's Rule 11 colloquy or to the magistrate judge's R&R (finding Felix's plea to Count 1 was knowing and voluntary). Ordinarily, when a defendant fails to object to a violation of Rule 11 in the district court, we review such claims, raised for the first time on appeal, for plain error. United States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003).

However, the government asserts that Felix waived any right to appeal at all, relying on Rule 59 of the Federal Rules of Criminal Procedure. Rule 59 authorizes a district judge to refer to a magistrate judge "any matter that may

14

dispose of a charge or defense," and provides that failure to object "waives a party's right to review" as follows:

> [w]ithin 14 days after being served with a copy of the recommended disposition, or at some other time the court sets, a party may serve and file specific written objections to the proposed findings and recommendations. Unless the district judge directs otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient. <u>Failure to object in accordance with this rule waives a party's right to review</u>.

Fed. R. Crim. P. 59(b)(1), (2) (emphasis added).

The Advisory Committee has explained that Rule 59's "waiver provision is intended to establish the requirements for objecting in a district court in order to preserve <u>appellate review</u> of magistrate judges' decisions." Fed. R. Crim. P. 59 Advisory Committee's note (2005) (emphasis added). The Advisory Committee has also stated that, "[d]espite the waiver provisions, the district judge retains the authority to review any magistrate judge's decision or recommendation whether or not objections are timely filed." <u>Id.</u> (citing <u>Thomas v. Arn</u>, 474 U.S. 140, 154, 106 S. Ct. 466, 474 (1985); <u>Matthews v. Weber</u>, 423 U.S. 261, 270-71, 96 S. Ct. 549, 554-55 (1976)). The government asserts Rule 59 waives not only Felix's right to object before the district court but also his right to review in this Court.

Here, the magistrate judge's R&R informed Felix that he had 14 days to file objections to the magistrate judge's recommendation to the district court that

15

Felix's guilty plea be accepted. The R&R did not, however, advise Felix if and how his failure to object could affect his rights before this Court. The R&R did not advise Felix that his failure to object would result in his waiver of his right to appellate review of his guilty plea, under even a plain error standard. In addition, this Court has not addressed, in a published opinion, the application of Rule 59(b)(2)'s waiver provision in the context of a challenge to the knowing and voluntary nature of a defendant's guilty plea. We need not address this Rule 59 issue because, even if Felix did not waive his right to challenge his guilty plea on appeal to this Court, we would review Felix's challenge only for plain error and Felix has not shown plain error. See Monroe, 353 F.3d at 1349. In Part III, we explain why.

## III. DISCUSSION

To establish plain error, the defendant must show (1) error, (2) that is plain, and (3) that affects substantial rights. United States v. Moriarty, 429 F.3d 1012, 1018-19 (11th Cir. 2005) (per curiam). If all three conditions are met, we may exercise our discretion to recognize the error if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (quotation marks and alteration omitted). For error to be plain, it must be "plain under controlling precedent or in view of the unequivocally clear words of a statute or

16

rule." United States v. Lett, 483 F.3d 782, 790 (11th Cir. 2007); see also United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam).

Under Rule 11, a court, when conducting a plea colloquy, must "conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." United States v. Hernandez-Fraire, 208 F.3d 945, 949 (11th Cir. 2000). In accepting a defendant's guilty plea, the court must specifically address the three core concerns of Rule 11 by "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." Moriarty, 429 F.3d at 1019. As part of the plea colloquy, Rule 11 requires that the court "inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). The court must also determine whether a factual basis supports the plea. Fed. R. Crim. P. 11(b)(3); see also United States v. Terzado-Madruga, 897 F.2d 1099, 1125 (11th Cir. 1990) (noting the court's "independent[]" obligation to satisfy itself that there is a factual basis for the plea).

A district court complies with the second core concern when the record supports its finding that the defendant understood both (1) what he was admitting, and (2) that "what he was admitting constituted the crime charged." United States

17

v. Mosley, 173 F.3d 1318, 1324 (11th Cir. 1999) (quotation omitted). "[T]here is no one mechanical way" by which a district court must advise a defendant of the charge to which he is pleading guilty, and Rule 11 does not require that the district court list every element of the offense seriatim. United States v. Wiggins, 131 F.3d 1440, 1442-43 (11th Cir. 1997) (per curiam) (holding the district court did not plainly err in failing to separately outline the elements of a bank robbery charge when it asked the defendant if he understood the nature of the charges, the defendant unequivocally pled guilty and admitted that he robbed banks, and the district court "incorporated the substance of those elements in a statement later on in the plea colloquy"). Similarly, the district court need not explicitly ask whether a defendant understands the nature of the charges against him. See United States v. Camacho, 233 F.3d 1308, 1315-17 (11th Cir. 2000) (holding the district court did not plainly err in failing to ask if the defendant understood the nature of a cocaine distribution charge when it explained the facts that the government needed to prove, the defendant acknowledged that she reviewed both the indictment and the plea agreement with counsel, expressed no confusion about the charge, and the facts were sufficient to establish her guilt). Rather, we will review whether the district court adequately addressed the second core concern on a case-by-case basis. United States v. James, 210 F.3d 1342, 1344 (11th Cir. 2000) (per curiam).

18

In the present case, after our review of the entire record, we conclude that Felix has not carried his burden of demonstrating plain error in the magistrate judge's Rule 11 plea colloquy. First, at the change-of-plea hearing, the magistrate judge established that Felix had received a copy of the indictment and had fully discussed the charges against him and his case in general with his attorney. The indictment, under Count 1, quoted extensively from the statutory language of 18 U.S.C. § 2251(a) and indicated that Felix had either violated the statute "or attempted to do so."

Second, the first paragraph of Felix's plea agreement, signed by Felix, explicitly stated that Felix was agreeing to plead guilty to Count 1 of the indictment, which the agreement identified as "Attempt to Produce Child Pornography, in violation of Title 18, United States Code, Section 2251(a)." At Felix's change-of-plea hearing, the magistrate judge confirmed that Felix had reviewed the agreement with his attorney and an interpreter, and that Felix had voluntarily signed the agreement because it was in his best interests to plead guilty. The magistrate judge then directed Felix's attention to the first paragraph of the plea agreement and asked Felix whether he understood that he had agreed "to plead guilty to Count One of the indictment[,] which count charges the defendant with attempt to produce child pornography in violation of Title 18,

19

United States Code, Section 2251(a)." Although Felix then requested a moment to discuss something with his attorney, following these discussions, Felix twice confirmed that he understood that he was pleading guilty to Count 1 of the indictment.

Third, and importantly here, Felix and the government executed and filed a factual stipulation concurrently with the filing of the plea agreement. This factual stipulation, on the top of its first page, identified the statute, 18 U.S.C. § 2251(a), that Felix was charged with violating, and then went on to set out the elements of an attempt to violate that statute. The stipulation then detailed the factual basis of Felix's attempt to produce child pornography and specifically included two facts that satisfied the interstate commerce element of the offense: (1) the text messages sent by Felix to AB were relayed through servers located in California; and (2) Felix's and AB's cell phones were manufactured outside of the United States. See 18 U.S.C. § 2251(a) (the image of child pornography may be either "transported or transmitted using any means or facility of interstate or foreign commerce" or "produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce"). Felix, his interpreter, and his attorney signed this stipulation, which set forth both the language of the § 2251(a) attempt offense and a sufficient factual basis for Felix's

20

guilty plea to that particular offense.

Notably too, at Felix's change-of-plea hearing, the magistrate judge confirmed that Felix had read the stipulation with the assistance of an interpreter, and that Felix understood that the stipulation set forth the details of his offense. The magistrate judge then asked whether the government or Felix's counsel desired to have the stipulation read into the record, and both attorneys expressly declined to have the magistrate judge read the stipulation in open court. We emphasize that, in addition to setting out the elements of a § 2251(a) attempt offense, the stipulation followed its recitation of the elements with the actual facts of Felix's offense, demonstrating how the elements were satisfied in Felix's particular case.

On appeal, Felix cannot now identify as error the magistrate judge's failure to expressly delineate the elements of his offense when (1) those elements were listed in three separate documents that Felix admitted reading (in the case of the indictment, plea agreement, and factual stipulation), and signing (in the case of the plea agreement and factual stipulation), all with the aid of an interpreter; and (2) his attorney expressly declined to have the magistrate judge read those elements into the record in open court. We therefore conclude that, on this particular record as a whole, there is ample support for the magistrate judge's

21

finding that Felix both understood the facts to which he was admitting, and that those facts "constituted the crime charged." Mosley, 173 F.3d at 1324.

In light of the facts and circumstances of this case, we cannot say that the magistrate judge plainly erred in conducting Felix's plea colloquy.[2] We thus affirm Felix's conviction.

**AFFIRMED.**

---

[2]Because Felix has not shown error that is plain, we need not address the third and fourth prongs of plain error review.